## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

PAMELA SUE ROSE,        )
                                        )

      Plaintiff,        )
                                         )

v.                         )     Case No.: 6:18-cv-00030-LCB
                                         )

NANCY A. BERRYHILL, Acting  )
Commissioner of Social Security,  )
                                         )

      Defendant.     )

## MEMORANDUM OPINION

On January 6, 2018, plaintiff filed a complaint seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g) (Doc. 1). Defendant filed an answer on April 30, 2018 (Doc. 8). On August 13, 2018, plaintiff filed a brief in support (Doc. 15). On September 12, 2018, the Commissioner filed a Brief in Support of Commissioner's Decision (Doc. 16). Plaintiff filed a reply on September 20, 2018 (Doc. 17). The parties presented oral arguments on June 10, 2019. Therefore, this matter is ripe for review. For the reasons stated below, the final decision of the Commissioner is reversed and remanded.

## I.    BACKGROUND

On August 16, 2012, plaintiff filed application for disability benefits under Title II, alleging an onset date of June 30, 2011. (Tr. 138). Her first hearing was a

video hearing in Jasper, Alabama on December 12, 2013.[1]  The Administrative

Law Judge (ALJ), Bruce W. Mackenzie, found that she was not disabled from her

onset of June 30, 2011 thru the date of the decision April 29, 2014.  (Tr. 147).  The

Appeals Council reversed and remanded this decision on November 17, 2015.  (Tr.

154).  Specifically, the Appeals Council remanded the decision for the ALJ to

accomplish the following:

> • Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c).
> • Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 as well as Social Security Rulings 85-16 and 96-8p).
> • Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).
> • Determine whether the claimant has a medically determined

[1] The plaintiff and her counsel appeared in Jasper, Alabama.  The ALJ and vocational expert participated from their location in Birmingham, Alabama.  (Tr. 138).

substance abuse disorder. If it is determined that the claimant has a substance abuse disorder, the Administrative Law Judge will then determine whether the claimant is disabled based upon all impairments, including the substance abuse disorder. If it is determined that the claimant is disabled, the Administrative Law Judge will then determine if the substance abuse disorder is material to the finding of disability (Social Security Ruling 13-2p).

(Tr. 153-154). Subsequently, the ALJ held a second hearing on March 12, 2016. Alabama.[2] (Tr. 10-19). Prior to this hearing the Plaintiff amended her onset date to September 5, 2013. (Tr. 280). On June 27, 2016 the ALJ issued the current decision. (Tr. 10-19). In doing so, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 12-219). The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016. (*Id.* at 12).

2. The claimant has not engaged in substantial gainful activity since September 5, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*) (*Id.*).

3. The claimant has the following severe impairments: major depressive disorder, single episode continuous, moderate; generalized anxiety disorder; polysubstance dependence in reported moderate term remission; obstructive sleep apnea; history of headache disorder; history of lumbar spine disc degeneration; history of cervical protrusion at C5-6; cervicalgia; and post-traumatic stress disorder (20 CFR 404.1520(c)) (*Id.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

---

[2] Again, the plaintiff and her counsel appeared in Jasper, Alabama by video and the ALJ and vocational expert participated from their location in Birmingham, Alabama. (Tr. 138).

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (*Id.* at 13).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps and stairs but never climb ladders or scaffolds. She can frequently stoop, crouch, kneel and crawl. The claimant should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes or operate commercial motor vehicles. The undersigned further finds that the claimant person could only remember short simple instructions and would be unable to deal with detailed or complex instructions. She could do simple routine repetitive tasks but would be unable to do detailed or complex tasks. She would be limited to making simple work related decisions. The claimant should have no more than occasional interaction with the general public but could have frequent interaction with co-workers and supervisors. She would be able to accept constructive non-confrontational criticism, work in small group settings and be able to accept changes in the work place setting if introduced gradually and infrequently. She would be w1able to perform assembly line work with production rate pace but could perform other goal-oriented work. In addition to normal workday breaks, she would be off-task about five percent of an eight-hour workday, in non-consecutive minutes. (*Id.* at 14).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565). (*Id.* at 18). [3]

7. The claimant was born on November 5, 1962 and was 50 years old, which is defined as an individual closely approaching advanced age, on the amended alleged onset date (20 CFR 404.1563). (*Id.*).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). (*Id.*).

---

[3] The ALJ found that the Plaintiff was not able to perform her past work, that of purchasing-contracting clerk (DOT 249.367-066) for Bevill State Community College which she had performed for sixteen (16) years, classified by the Vocational Expert (VE) as sedentary and semi-skilled. (Tr. 73).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2) (*Id*.).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)) (*Id*.).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 5, 2013, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(g)). (*Id*. at 19).

Plaintiff requested a second review by the Appeals Council, which was denied on November 15, 2017. (Tr. 1). At that point, the ALJ's decision became the final decision of the Commissioner. *Henry v. Comm'r of Soc. Sec*., 802 F.3d 1264, 1267 (11th Cir. 2015). Plaintiff then filed this action on September 28, 2017. (Doc. 1).

## II. DISCUSSION

The Social Security Act authorizes payment of disability insurance benefits and supplemental social security income to persons with disabilities. 42 U.S.C. §§ 423, 1381 (2012). The law defines disability as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§

404.1505(a), 416.905(a).[4]

## A.    Standard of Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## B.    Five-Step Sequential Evaluation

The Social Security Administration has promulgated regulations that set

---

[4] On January 18, 2017, the Social Security Administration significantly revised its regulations regarding the evaluation of medical evidence to determine a disability; those new regulations became effective on March 27, 2017. The Court, however, must apply the regulations in effect at the time that the ALJ entered his decision. *See Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 944 n.6 (11th Cir. 2017) ("We apply the regulations in effect at the time of the ALJ's decision."). Because the ALJ entered his decision on June 27, 2016, the Court will apply the regulations in place at that time.

forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1. Is the claimant engaged in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step. *Id.*

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to perform basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step. *Id.*

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step. *Id.*

4. Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step. *Id.*

5. Even if the claimant cannot perform past relevant work, does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled. *Id.*

The claimant bears the burden of proof with respect to the first four steps. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). The burden then shifts to the Commissioner at the fifth step to prove the existence of

jobs in the national economy that the claimant is capable of performing; however, the burden of proving lack of RFC always remains with the claimant. *Id*.

## C.  Plaintiff's Allegations

Plaintiff alleges in her complaint that the ALJ's finding of not disabled is erroneous for the following reasons:

1. The ALJ erred by failing to consider the substantial evidence that establishes the fact that Ms. Rose is disabled; and

2. The ALJ failed to properly evaluate Ms. Rose's credibility.

(Doc 1, p. 2).  In her brief, plaintiff argues that the ALJ did not give proper weight to her treating physicians, namely her neurologist, Dr. Lorn Miller.  (Doc 15).  She further argues that the ALJ failed to properly evaluate her alleged symptoms. (Doc. 15).

## D.  Analysis

### 1.  *Weight given to treating physician*

This Circuit has held that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) and *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th  Cir. 1985).   This reliance on a treating physician's opinion is consistent with the Commissioner's regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 CFR § 404.1527(c)(2). Conversely, an ALJ may give less weight or disregard the opinion of a treating physician altogether when the record substantially supports findings that "the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir.2004).

Here, the plaintiff argues that the ALJ erred by giving less than substantial weight to Dr. Lorn Miller, a treating physician who has treated the plaintiff since 2004. Specifically, the ALJ states that he affords

> "some weight to the opinions of Dr. Lorn Miller, M.D., that are consistent with the above [RFC], [sic], however, his opinions regarding the claimant's mental health are afforded less weight as he is not a mental health specialist, he did not have the complete picture regarding her persistent substance abuse, and his opinions are simply not in line with the much milder symptoms described in her treatment notes. The undersigned affords little weight to the other opinions of Dr. Miller, as those opinions are inconsistent with the great weight of the medical evidence of record and it appears his opinions are heavily based on the claimant's subjective complaints, as there is no diagnostic evidence that would support such severe symptoms."

(Tr. 17).    Records show that Dr. Miller, a board certified neurologist, began

treating the plaintiff in 2004 as a result of her first all-terrain vehicle (ATV)

accident. (Tr. 564).    During Dr. Miller's treatment plaintiff suffered a total of two

(2) (ATV) accidents where she incurred severe head injuries.[5]    Even though he is a

neurologist, Dr. Miller has acted as a general physician to the plaintiff treating her

for a wide range of medical issues including her mental health issues.  Dr. Miller

performed a Functional Capacity Assessment on November 22, 2013, stating that

the plaintiff suffered from two (2) Traumatic Brain Injuries (TBI),[6] major

depression, migraines,[7] forgetfulness, insomnia, cervicalgia [neck pain] , excessive

sleeplessness, lower back pain (LBP), presyncope [severe lightheaded feeling],

chronic vertigo/dizziness.  Further, he found that (1) she could not sit or stand

longer than 1 hour continuously at one time without break; (2) walk continuously

for two hours without break; (3) needed to lie down 1-3 hours as necessary to

alleviate her mental and physical pain; and (4) she would miss 100 plus days from

---

[5] In his opinion the ALJ noted that her injuries from the ATV accident in 2004 were broken
collar bone, hearing loss, ear pain, skull fracture and severe concussion.  He notes a second ATV
accident in 2010 where she hit a ditch, was ejected from the ATV landed on her back and
suffered similar injuries. (Tr. 349).

[6] In his deposition Dr. Miller explains that the TBI's "included subdural hematoma, skull fracture
and contusion of her labyrinthine system."  (Tr. 568).

[7] Again in his deposition Dr. Miller states "[s]he has headache disorder, common migraines and
posttraumatic headaches, which include a post-concussive syndrome."  (Tr. 568).

work due to her physical and mental ailments.  (Tr. 551-52).[8]

Our Circuit in *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011) outlined the law relating to an ALJ's evaluation of medical opinion evidence as follows:

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis*, 125 F.3d at 1440; see also 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240–41.

> ". . . [an] ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam).  'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.' *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). Therefore, when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.' *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam).  In such a situation, 'to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979)) (internal quotation marks omitted)."

---

[8] There is no question that had the opinion of Dr. Miller been given substantial weight the plaintiff would have been disabled within the meaning of the act and according to the testimony of the vocational expert at the hearing on March 21, 2016.  (Tr. 77-78).

*Id.* at 1179.  See also *Santos v. Social Security Administration, Commissioner*, 731 Fed. Appx. 848, 853 (11th Cir. 2018).    In the case at bar, the ALJ has failed to give "good cause" for giving less than substantial weight to Dr. Miller's opinion. The ALJ did give reasons for giving less weight to Dr. Miller, but the reasons are not based upon substantial evidence and contrary to the evidence presented in this case.

First, the ALJ discounted Dr. Miller's opinions regarding the plaintiff's mental health issues stating that Dr. Miller "is not a mental health specialist."  This finding is contrary to Dr. Miller's sworn statement which references specific training in psychiatry and that he regularly diagnoses and treats patients for a wide range of mental health conditions.  (Tr. 564-565).  As a matter of fact, Dr. Miller diagnosed the plaintiff with depression and treated her symptoms for a substantial period of time.    20 C.F.R. § 416.927(c), provides that an ALJ is to determine weight given to a medical opinion based upon the following factors:

> (1) Examining relationship. Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief

hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her medical opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's medical opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical

opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.

(5) Specialization. We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 416.927(c). The main factors for determining weight of a medical opinion are the nature and length of the treating relationship consistent with the medical evidence. Dr. Miller is a treating physician according to this regulation who has treated and examined the plaintiff since 2004 for mental health issues.

Dr. Miller is certified by the American Board of Psychiatry and Neurology with an emphasis on neurology. (Tr. 564-565). In his deposition Dr. Miller explains that he has to have a significant level of psychiatric knowledge and training because most of his patients have an underlying mental issue which impacts the success of his neurological treatment. (Tr. 565-66). The fact that he does not solely specialize in mental health treatment is not sufficient cause to give less weight to his opinion as a treating physician with regard to plaintiff's mental health. Generally, a medical specialty opinion is given more weight when weighed against a competing medical specialty or non-specialty opinions. Dr. Miller's opinions regarding the claimant's mental health are not inconsistent with his own treatment records or inconsistent with the other medical opinion evidence offered, such as the opinions of Dr. Blotchy and Dr. Goff.[9] Considering the length of treatment, nature of treating relationship and specialty, Dr. Miller's opinions regarding plaintiff's mental health are treating source opinions that "provide a detailed, longitudinal picture" of her mental health and treatment pursuant to 20 CFR § 404.1527(c)(2) and are entitled to substantial weight.

Second, the ALJ found that Dr. Miller's opinions are inconsistent with the great weight of the medical evidence. This finding is a misrepresentation of the

---

[9] Dr. Blotchy provided a psychological evaluation in January of 2013 and Dr. Goff provided a psychological evaluation in January of 2016.

medical evidence for the great weight of the medical evidence is the treatment records by Dr. Miller. The ALJ cites several records that he claims "do not support her allegations." The ALJ uses these records to both discredit the plaintiff's allegations and the opinions of her treating physicians. The first is a treatment record from January 21, 2013 with Dr. Miller which confirms plaintiff's back pain and depression. The record is not inconsistent with her allegations and/or the medical opinions. It further notes that she is not able to afford her medical treatment, but this issue is not addressed by the ALJ.[10] (Tr. 379). Next is a treatment record from November 2014 where she received treatment at the Walker Baptist Medical Center Emergency Room (ER) for Bronchitis. The ALJ states that this admission shows that she had a normal mood and affect. Interestingly, the ALJ accepts a single treatment note as an opinion regarding her mental health without discussing the nature and validity of the opinion pursuant to the factors cited earlier as found in 20 C.F.R. § 416.927(c). (Tr. 593). This record is for treatment of bronchitis and is not substantial evidence to support his findings. In February of 2015 she is treated at Capstone for a deep cough. The ALJ finds that

---

[10] The issue of the plaintiff's ability to afford medical care is not directly before this Court. It does not appear that the ALJ denied her disability benefits because she failed to comply with prescribed medication. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (". . .when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment."). See *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988).

this treatment record shows that she did not properly report drug use; that her physical disability (that of deep cough) does not affect her ability to work; and that she is self-reliant in her ADLs (Activities of Daily Living).  He does confirm that this record notes her history of depression. (Tr. 596).  Again, this note is from a single medical treatment and there is no analysis of the nature and validity of the opinion.  Last, in March 2016 she is treated by Northwest Alabama Mental Health Clinic.  The ALJ states that the treating psychiatrist reported no serious problems. However, these records as a whole show serious mental health issues, to include history of trauma and active suicide ideation recommending treatment and monitoring.  (Tr. 638).  Contrary to the ALJ's finding the psychiatrist failed to make any mental health findings regarding her depression and post-traumatic stress disorder (PTSD) citing the need for primary care physician (pcp) records and ordering further treatment.  (Tr. 645).[11]  Yet again this is a single treatment record and there are no findings in this record regarding her claimed mental health issues. Thus, the treatment record is not substantial evidence of good cause to give less weight to the opinion of her treating physician and specialists.

Third, the ALJ found that Dr. Miller's opinions are not entitled to substantial weight because they are heavily based upon claimant's subjective complaints and

---

[11] It appears that this record was created to evaluate the plaintiff for suicide history and present ideations, the psychiatrist found none on the date of examination.

not on diagnostic evidence. Dr. Miller is her lone treating physician and his records are essentially the only consistent medical opinions of record regarding her medical issues and treatment history. Again contrary to the ALJ's opinion, Dr. Miller's records note several MRI's and/or diagnostic records supporting her alleged pain which show mild disc protrusion at C5-6; degenerative changes at L4-5 and L5-S1; and minimal anterior subluxation of C7 on T1 secondary to facet joint degenerative change. (Tr. 408). Further, as stated earlier, Dr. Miller's records confirm two (2) traumatic brain injuries; consistent complaints of pain regarding her back and neck and depression for a treatment period of at least nine (9) years over a span of 35 medical examinations.

Fourth, the ALJ states that Dr. Miller "did not have the complete picture regarding her persistent substance abuse." Again, this finding is in conflict with Dr. Miller's sworn deposition statement wherein he appears to be acutely aware of her drug use:

> Her occasional marijuana use is certainly not contributing to her limitations physically, emotionally or intellectually. I truly believe that she self-medicates her anxiety and her depression with -- with marijuana. And she's told me that there's just been times that she's just so sick of life that she can't eat and that it will sometimes help her. And that she you know, she gets completely withdrawn. And if she imbibes a little marijuana, then, it --she kind of relaxes a little bit and she can be a little bit more civil with her family.

(Tr. 574-75). The plaintiff testified at the hearing that she had used drugs in the

past, but she was in recovery and no longer using. (Tr. 64). The ALJ darted around the issue of "polysubstance abuse," but seemed to have been satisfied that the plaintiff was abstinent and did not make any direct findings regarding substance abuse. (Tr. 64). Clearly Dr. Miller was aware of her prior use of marijuana as self-medication and not as a contributing factor to her mental or physical conditions.

2**. *Plaintiff's credibility***

In *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014), the court discussed credibility determinations as follows: "We have held that credibility determinations are the province of the ALJ, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and we will not disturb a clearly articulated credibility finding supported by substantial evidence, *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) . . . 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted)." *See also Brito v. Comm'r, Soc. Sec. Admin.*, 687 Fed. Appx. 801, 803, (11th Cir. 2017). It is clear that the ALJ in this case failed to consider the entire record, her longitudinal medical history. Other than the foregoing treatment records, which as stated are

not substantial evidence of "good cause," the ALJ provides no other reasons for discrediting plaintiff's alleged symptoms of disability. Therefore, as a matter of law, her allegations[12] must be accepted as true. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

In sum, the ALJ has failed to provide "good cause" and/or to articulate legitimate reasons for giving less than substantial weight to Dr. Miller. Likewise, the reasons given by the ALJ are not supported by substantial evidence. *Winschel*, 631 F.3d at 1179. Consistent herewith the ALJ also failed to give proper weight to the opinions of Dr. Blotchy and Dr. Goff. Both provided independent psychological evaluations one year apart that simply bolster the opinion of Dr. Miller regarding plaintiff's mental health condition. Dr. Blotchy's evaluation in January of 2015 finds her disabled due to marked (serious interference with ability to function) abilities to respond to supervisors; customers; general public; and deal with routine work changes; routine work pressures; and maintain attention and concentration for 2 hours. (Tr. 365). Whereas, Dr. Goff's evaluation in January

---

[12] The ALJ finds her allegations of disability based upon her disability report and testimony at the hearing. Specifically, he states that "[a]ccording to her disability report, the claimant bases her allegation of disability on injuries she sustained to her head and back during her 2004 accident, her difficulty in maintaining focus and mental difficulties, depression, anxiety, gastroesophageal reflux disease, poor memory, and sleep apnea (Exhibit 2E). The claimant alleged at the hearing that she has mental issues on a daily basis; that she has back pain in her lower back; that she takes a muscle relaxer; that she does not have any prescribed pain medication, but takes over the counter medication; that she can walk/stand about 15 minutes; that she lays down during the day due to back and leg pain; that she can drive with no restrictions, though she prefers not to drive at night; that she was in recovery for marijuana and crystal meth abuse; and that she was just not able to function like she used to." (Tr. 15).

of 2016 finds her disabled due to extreme (no useful ability to function in this area) limitation in ability to make judgments on simple work-related decisions and to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 630).

The plaintiff originally filed her petition in 2012 at 49 years old and after two hearings, one reversal by the Appeals Counsel and this appeal she is now 56 years old, six (6) years from her original filing. As stated earlier, the plaintiff's treating physician and specialists were of the opinion that the plaintiff was not able to work. (Tr. 77-78, 360-65, 374-403, 404-550, 551-52, 625-33).[13] The ALJ failed to articulate "good cause" for rejecting the opinions of the plaintiff's treating physician and specialists. Therefore, as a matter of law, their testimony must be accepted as true. It is clear to the Court that, considering the combination of plaintiff's impairments, her testimony and the testimony of her treating physician and specialists, the plaintiff is disabled within the meaning of the Social Security Act.

Plaintiff requests that this Court reverse and remand for award of benefits. Under 42 U.S.C. § 405(g), this Court can reverse and remand with or without hearing. Further this circuit has held that the court can reverse and remand for

---

[13] Also, given this testimony the Vocational Expert found that she was not able to perform any gainful activity. (Tr. 77-78).

immediate award of benefits ". . . where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).   In the present case, the Court finds that the essential evidence has been considered by the Commissioner, over the course of two administrative hearings and two separate legal reviews with one previous remand, and based upon the foregoing analysis the plaintiff is disabled "without any doubt." *Id.*

## III.   CONCLUSION

Consequently, after careful and independent review of the record, briefs and oral arguments, the Court concludes that, for the reasons given above, the decision of the Commissioner of the Social Security Administration is due to be REVERSED, and the case REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed.  A final judgment will be entered separately.

**DONE** this June 18, 2019.

_____

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE